FILED IN OPEN COURT
U.S.D.C. - Atlanta

FEB 26 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*v.*<br>EIJROGHENE ("EIJRO") O. OKUMA | Criminal Information<br>No. 1:26-cr-081 |

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One**
**(Wire Fraud)**

1. Beginning on a date unknown, but from at least in or about February 2022 and continuing through in or about April 2025, in the Northern District of Georgia and elsewhere, the defendant, **EIJROGHENE ("EIJRO") O. OKUMA,** knowingly devised and intended to devise a scheme and artifice to defraud a client, and to obtain money and property from a client by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme and artifice to defraud, with the intent to defraud, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

**Background**

2. **OKUMA** resided in Lithia Springs, Georgia. From in or about 2010 until in or about May 2023, **OKUMA** was a financial and investment adviser with Edward D. Jones & Co. LP (d/b/a Edward Jones Investments) ("Edward Jones"). In or about May 2023, **OKUMA** left Edward Jones to join Equitable Advisors,

LLC ("Equitable Advisors") as a financial and investment adviser. In or about April 2023, **OKUMA** registered Okuma Capital Management LLC with the Georgia Secretary of State. In or about June 2025, **OKUMA** resigned from Equitable Advisors. **OKUMA** was a registered broker while employed with Edward Jones and Equitable Advisors and held Series 7, 63, 65 and 66 licenses.

3. Victim-1 was born in 1944 and resided in Carrollton, Georgia. **OKUMA** served as a financial and investment adviser to Victim-1 from in or about 2016 until in or about March 2025. As Victim-1's financial and investment adviser, **OKUMA** had complete access to Victim-1's brokerage and financial accounts, including Victim-1's brokerage accounts at Edward Jones. **OKUMA** was also responsible for paying Victim-1's expenses, including his federal and state taxes.

4. In or about August 2021, Victim-1's sister, his last living relative, passed away without a will. Victim-1 was his sister's sole heir. Victim-1's sister's estate consisted primarily of her residence located in Vinings, Georgia.

5. The Tithe LLC was a business organized by **OKUMA's** wife and registered with the Georgia Secretary of State on or about January 31, 2018. The Tithe LLC maintained a bank account at Bank of America ("BOA Tithe Account").

6. Edward Jones was a financial services company headquartered in St. Louis, Missouri, employing approximately 20,000 investment advisers nationally. Edward Jones served its investment clients through a branch network with more than 15,000 locations in the United States and Canada.

7. Equitable Advisors provided financial planning, wealth management, retirement planning, protection and risk management services to clients across the country. Equitable Advisors was one of the principal franchises of Equitable

Holdings, Inc., which was a financial services company headquartered in New York City.

8. United Community Bank, Inc. ("UCB") was an FDIC-insured financial institution headquartered in Greenville, South Carolina, with approximately 200 locations in Alabama, Florida, Georgia, North Carolina, South Carolina, and Tennessee. Victim-1 maintained a personal account at UCB.

9. The Vanguard Group, Inc. ("Vanguard") was a registered investment adviser based in Malvern, Pennsylvania. Vanguard offered its customers, among other things, brokerage services, educational account services, financial planning, asset management, and trust services. Vanguard was one of the largest providers of mutual funds and exchanged-traded funds.

**Scheme to Defraud**

10. **OKUMA** used his position as Victim-1's financial and investment advisor to defraud and embezzle over $9.5 million from Victim-1 between in or about February 2022 and in or about March 2025.

11. In or about February 2022, in the Northern District of Georgia, **OKUMA** was appointed the estate administrator for Victim-1's sister.

12. In or about February 2022, **OKUMA** opened an account for Victim-1's sister's estate at Bank of America ("BOA Estate Account").

13. In or about March 2022, **OKUMA** falsely represented to Victim-1 that his sister's estate required funds. Based on **OKUMA's** materially false representations, Victim-1 permitted **OKUMA** to transfer $500,000 (in a series of $100,000 transactions) from one of Victim-1's Edward Jones's brokerage accounts to Victim-1's UCB account and ultimately to the BOA Estate Account.

14. On or about April 22, 2022, **OKUMA** transferred the $500,000 from the BOA Estate Account to the BOA Tithe Account without Victim-1's knowledge and authorization.

15. On or about June 2, 2022, Victim-1, based on **OKUMA's** materially false representations, permitted **OKUMA** to transfer $100,000 from one of Victim-1's Edward Jones brokerage accounts to Victim-1's UCB account. On or about June 8, 2022, **OKUMA** transferred the $100,000 to the BOA Estate Account.

16. On or about June 7, 2022, **OKUMA** was involved in the creation of a Revocable Trust for Victim-1 ("Victim-1 Revocable Trust") and was designated as the successor trustee to Victim-1. In or about November 2022, **OKUMA** executed a quitclaim deed assigning the title of Victim-1's residence to the Victim-1 Revocable Trust.

17. On or about June 9, 2022, Victim-1's sister's residence was sold and approximately $299,279 was wired into the BOA Estate Account as proceeds from the closing. Victim-1 was entitled to the proceeds of the sale as his sister's sole heir. As the administrator of Victim-1's sister's estate, **OKUMA** was required to ensure that Victim-1 received the funds. Victim-1 never received any of the proceeds from the sale of his sister's residence.

18. Rather than provide Victim-1 the proceeds from the sale of his sister's residence, **OKUMA** transferred approximately $400,000 of Victim-1's money—consisting of the $100,000 transferred from the Edward Jones brokerage account in June 2022 and proceeds from the sale of Victim-1's sister's residence—to the BOA Tithe Account. **OKUMA** transferred these funds without Victim-1's

knowledge or authorization. As of June 2022, **OKUMA** had embezzled $900,000 from Vicitm-1.

19. On or about February 3, 2023, **OKUMA** pretended to be Victim-1 and opened an unauthorized Vanguard brokerage account in the name of the Victim-1 Revocable Trust ("Vanguard Account"). To open the account, **OKUMA** used Victim-1's personal identifying information and a created a fraudulent Yahoo email account in Victim-1's name. **OKUMA** opened the Vanguard Account by faxing the account opening documents using interstate wires from an Office Max located in Atlanta, Georgia, to Vanguard in Pennsylvania. In the application, **OKUMA** requested that duplicate statements and confirmations be mailed to his personal address in Lithia Springs, Georgia. Victim-1 did not authorize **OKUMA** to open the Vanguard Account and had no knowledge of the account until **OKUMA's** fraudulent scheme was uncovered in or about April 2025.

20. On or about February 6, 2023, **OKUMA** opened an account at UCB in his name ("Okuma UCB Account"). That same day, **OKUMA** was also added as a custodian to Victim-1's UCB account with right of supervisorship, which gave **OKUMA** complete authority to access and withdraw funds from Victim-1's UCB account without first obtaining his authorization and approval.

21. On or about February 14, 2023, **OKUMA** began funding the Vanguard Account by transferring funds from Victim-1's Edward Jones's brokerage accounts. By the end of February 2023, **OKUMA** had transferred approximately $9 million of Victim-1's funds to the Vanguard Account without Victim-1's knowledge and authorization.

22. On or about April 25, 2023, **OKUMA**, without Victim-1's knowledge or authorization, electronically completed a DocuSign form using the fraudulent Victim-1 Yahoo email account to establish checkwriting services on the Vanguard Account. On or about May 2, 2023, Vanguard activated checkwriting on the Vanguard Account.

23. Between in or about August 2023 and March 2025, **OKUMA** embezzled approximately $9 million of Victim-1's funds from the Vanguard Account by: (i) writing checks to the Tithe LLC and Okuma Capital Management totaling $7,243,000; and (ii) transferring approximately $1.65 million to Victim-1's UCB account, which **OKUMA** thereafter transferred to the Okuma UCB Account.

24. **OKUMA** concealed and attempted to conceal his scheme in different ways, including: (i) collecting Victim-1's mail relating to his financial accounts throughout the duration of the scheme; and (ii) signing a letter on Equitable Advisors's letterhead in or about March or April 2025 falsely claiming that Victim-1 was an "old client" and **OKUMA** was not presently managing or accessing any of Victim-1's investments. In the same letter, **OKUMA** also attempted to deflect attention by falsely blaming Victim-1's caregiver of "going around town trying to gain control of [Victim-1's] money."

25. **OKUMA** used the funds he fraudulently obtained and embezzled from Victim-1 for various things, including purchasing, designing, and building a $5.2 million residence in Vinings, Georgia, spending approximately $1.4 million to join a beach club and purchase a fractional share of a beach house, and making approximately $340,000 in donations to his church.

26. Beginning in late 2024, Victim-1 and his wife attempted to question defendant **OKUMA** about the status of Victim-1's finances and accounts. **OKUMA** was evasive and refused to answer their questions. Victim-1 and his wife subsequently contacted Equitable Advisors and learned that Victim-1 did not have any accounts with Equitable Advisors. Victim-1 and his wife also contacted UCB trying to obtain specific information about the state of Victim-1's finances and determine whether **OKUMA** had embezzled and misappropriated any of Victim-1's funds. In or about April 2025, Victim-1 and his wife learned the full extent of **OKUMA's** scheme to defraud and embezzle millions of dollars from Victim-1.

27. To execute the scheme to defraud, the defendant, **EIJROGHENE ("EIJRO") O. OKUMA,** caused the transmission of interstate wire communications. Among other executions, on or about February 6, 2023, in the Northern District of Georgia, **OKUMA,** for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and omissions, with the intent to defraud, caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, the transmission of a Vanguard account opening application via fax from an Office Max located in the Northern District of Georgia to Vanguard in Pennsylvania via a processor based in New Jersey.

All in violation of Title 18, United States Code, Section 1343.

## Forfeiture Provision

28. Upon conviction of the sole offense alleged in this Criminal Information, the defendant, **EIJROGHENE ("EIJRO") O. OKUMA**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real and personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the sole offense alleged in this Criminal Information.

29. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a) cannot be located upon the exercise of due diligence;
b) has been transferred to, sold to, or deposited with, a third party;
c) has been placed beyond the jurisdiction of the Court;
d) has been substantially diminished in value; or
e) has been commingled with other property, which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of other property of the defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602
75 Ted Turner Drive S.W.
600 U.S. Courthouse
Atlanta, GA 30303
404-581-6000